UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ALICIA CHAPMAN,<br><br>  Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant. | Case No. 2:20-cv-01858-EJY<br><br>**ORDER** |

Plaintiff Alicia Chapman ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or the "Agency") denying her application for disability insurance ("DIB") under Title II of the Social Security Act. For the reasons stated below, the Commissioner's decision is affirmed.

### I.   BACKGROUND

On August 25, 2016, Plaintiff filed an application for DIB alleging an onset date of August 1, 2015. Administrative Record ("AR") 276-82. The Commissioner denied Plaintiff's claims by initial determination on November 28, 2016, and upon reconsideration on January 26, 2017. AR 165-71, 173-79. On May 24, 2018, Administrative Law Judge ("ALJ") Rebecca L. Jones held a hearing at which Plaintiff appeared and gave testimony. AR 106-146. A supplemental hearing was held on August 28, 2018. AR 69-105. The ALJ heard testimony from Plaintiff and vocational expert ("VE") Doug Lear. AR 91-102. Plaintiff's attorney conducted a brief cross-examination of the VE. AR 99-102. The ALJ ultimately found that Plaintiff was not disabled, issuing her determination on August 20, 2019. AR 31-44. When the Appeals Counsel denied Plaintiff's request for review on July 27, 2020, AR 1-90, the ALJ's decision became the final order of the Commissioner. 42 U.S.C. § 405(g). This civil action followed.

### II.   STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42

U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). In reviewing the Commissioner's alleged errors, the Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986) (internal citations omitted).

"When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198, *citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal citation omitted). Finally, the court may not reverse an ALJ's decision when an error is harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

### III.   DISCUSSION

**A.   <u>Establishing Disability Under The Act</u>**

To establish whether a claimant is disabled under the Act, there must be substantial evidence that:

(a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and

(b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), *citing* 42 U.S.C. § 423(d)(2)(A). "If a claimant meets both requirements, he or she is disabled." *Id*.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R.

2

§ 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (internal citation omitted); 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. *Tackett*, 180 F.3d at 1098.

> The five steps are:
>
> Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(b).
>
> Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(c).
>
> Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(d).
>
> Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(e).
>
> Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. *See* 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. *See* 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits. *See id*.

*Id*. at 1098–99 (internal alterations omitted).

B. **Summary of ALJ's Findings**

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of August 1, 2015 to the date last insured, December 31, 2015. AR 37. At step two, the ALJ found that Plaintiff suffered from severe medically determinable impairments consisting of moderate to severe right acromioclavicular joint arthrosis and mild cervical degenerative disc disease. *Id.* The ALJ also found that Plaintiff suffered from a number of medically determinable impairments not lasting for a continuous period of at least 12 months and therefore not rising to the level of severe under 20 CFR 404.1509. *Id.* At step three, the ALJ found that Plaintiff had no impairment or combination of impairments meeting or equaling any "listed" impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 38.

In preparation for step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[1] through the date last insured to "perform sedentary work as defined in 20 CFR 404.1567(a);" to "stand and/or walk for 15 to 20 minutes at a time and less than two hours in total in an eight-hour workday … sit for more than six hours total in an eight-hour workday … occasionally balance, stoop, kneel, crouch, and climb," but "she could never crawl." AR 39. Plaintiff had the RFC to "occasionally reach overhead and at shoulder height bilaterally." *Id.*

At step four, the ALJ found Plaintiff "capable of performing past relevant work as a "'[r]eceptionist'" as actually and generally performed because receptionist work does not require Plaintiff to perform "work-related activities precluded by" Plaintiff's RFC. AR 43.

Based on the above, the ALJ concluded that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time" from the alleged onset date through the date last insured. *Id.*

---

[1] "Residual functional capacity" is defined as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1).

**C.     Step Four Analysis**[2]

    **1.     Plaintiff's relevant history and past work.**

At the time of her 2018 hearings, Plaintiff was a 57-year-old married woman with a high school diploma and no dependent children. AR 76, 119-120. Plaintiff's husband, who is not working due to disability, and has been receiving disability benefits since 2014, suffers from frequent seizures. AR 120-121. Plaintiff's descriptions of her work history includes a massage school receptionist position she held from 1996-2006, a medical receptionist position she held from 2007-2009, a housekeeper position she held in 2012, a seasonal position at Target in 2012, and, most recently, a caregiver position she began in September 2015. AR 80, 129, 330.

At step four, "the claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands, and nonexertional demands of such work." SSR 82-62. Plaintiff testified that from 2007 to 2009, she had worked as a medical receptionist full time. AR 129. As a medical receptionist, her duties included answering phones, checking in patients, making appointments, "filing, making phone calls, taking care of the front desk," arranging appointments and looking into medical records. *Id.* Plaintiff also testified that she had worked as a receptionist at a college, greeting students, answering phones, making appointments, copying, filing, and general "administrator assistant work." AR 130.

Plaintiff further described her medical receptionist job at her second hearing on August 28, 2018. She testified that, for eighteen months she worked for Dr. Loren Finley, OB/GYN, as a medical receptionist. AR 84-85. Her work involved, "customer service, patient service, filing, making appointments, scheduling appointments, checking insurance … getting files and everything ready for the next day, mainly office work … computer, faxing … answer[ing] the phones." AR 85.

In addition to testimony, the administrative record includes a Work History Report Plaintiff completed describing the requirements of her medical receptionist job. AR 334. On the handwritten

---

[2] The Court only summarizes Plaintiff's work history and the VE testimony offered at Plaintiff's second administrative hearing because Plaintiff stipulates to the ALJ's findings in steps one through three, to the RFC finding prior to step four, and stipulates that "the ALJ fairly and accurately summarized the evidence contained in the Administrative Record." ECF No. 27 at 3. The ALJ's failure to reconcile alleged conflicts between the RFC finding and the requirements of Plaintiff's past relevant work is the only basis for Plaintiff's challenge. *Id.*

form, Plaintiff wrote that her medical receptionist job required her to "answer multi[ple] phone lines, maintain up keep of front office, customer services, filing, operate front office equipment" and perform "charting." *Id*. She wrote that the job required her to walk, stand, crawl, handle, grab, or grasp big objects, and climb for zero hours, sit for 6-7 hours, stoop for 1/3 of the day, kneel for 1/2 of the day, and write, type, or handle small objects for 1/3 of the day. *Id*. Plaintiff left blank the spaces indicating the amount of time spent crouching and, most importantly, reaching. *Id*.

The ALJ at the first hearing asked Plaintiff to explain why she felt unable to work as of the alleged onset date of August 1, 2015. AR 131. Plaintiff began by describing an "incident" in 2014, when she discovered her husband "on the floor, table cracked open" after a near-fatal seizure. AR 132-33. She described "difficulties in [her] mind" related to her husband's seizure, AR 131-32, attempting to cope with and being "overwhelmed" by anxiety around her husband's condition, and ultimately seeking counselling in 2016 for her psychological distress and "depression." AR 133. When asked if she believed she could have handled working as a medical receptionist during that period, Plaintiff responded that the receptionist position "wasn't really that bad;" that she could have done it a "couple of days a week or so" but not on a full-time basis. AR 134. When asked to elaborate on why returning to the position would have been a problem for her, Plaintiff responded, "I don't know if it would've been a problem so much," *Id.*, and continued, "I don't know if I, if I would've been able to concentrate full-time, eight hours a day on my job and give it 100 percent if my mind is going to always focus on what's going on with my husband. Is he okay? Why didn't he answer the phone? Did he have a seizure? Is he on the floor? I mean, that's what I was going through." AR 134-35. The ALJ asked Plaintiff if it was "fair to say that, during this time, it was more of what was going on with your depression and going on mentally than what was going on with you physically?" AR 135. Plaintiff responded, "I would probably say yeah." *Id.*

Plaintiff also testified at her first hearing to issues with her rotator cuff, for which she saw a physical therapist sometime between 2015-2016. AR 135-136. She testified that physical therapy was helpful. AR 136. In addition, Plaintiff said she suffered from "a little bit of stiffness" "every once in a while" due to degenerative disc disease in her neck. *Id*. She further testified at her second hearing that the physical therapy "was helpful during that time," but that she now had to return for

6

more physical therapy to treat her rotator cuff.  AR 90.  At one point during Plaintiff's first hearing, when the ALJ was questioning Plaintiff about her work in 2015 as a caregiver, the ALJ asked if Plaintiff's shoulder ever interfered with her work, to which she responded, "I would say more of my, my legs, my knees, and I would say more of my mind."  AR 142.

### 2. VE testimony at Plaintiff's second administrative hearing.

VE Doug Lear appeared telephonically at Plaintiff's supplemental hearing on August 28, 2018 to testify before the ALJ.  AR 74.  An ALJ is not required to consult a vocational expert in making her determination that a claimant can perform past relevant work at step four, but the regulations permit VE testimony at this stage. 20 C.F.R. § 404.1560(b)(2) ("We may use the services of vocational experts or vocational specialists ... to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity.").

At the second administrative hearing, the ALJ went through Plaintiff's work history with Plaintiff again for the benefit of the VE.  AR 76-93.  The VE testified that Plaintiff performed past relevant work as a home attendant, sales attendant, receptionist, administrative clerk, cleaner, and general clerk.  AR 93-94.  The VE in relevant part classified Plaintiff's past work at the OB/GYN office as "receptionist," DOT number 237.367-038, defined as "sedentary" and "semiskilled" work, specific vocational preparation or "SVP"[3] level 4.  AR 94.  Following the classification testimony, the ALJ posed a series of hypotheticals to the VE, the fourth of which is repeated here:

> I would like you to assume an individual with the Claimant's age, education and work experience, who is able to perform work at the sedentary level.  This person could stand and walk for less than two hours total, for 15 to 20 minutes at a time, would be able to sit for more than six hours in an eight-hour work day, occasionally climb, balance, stoop, kneel, and crouch, could never crawl, and could occasionally reach overhead and shoulder height bilaterally.

AR 98.  When the ALJ asked whether the hypothetical individual could work in any of Plaintiff's past relevant positions "as it was actually performed or as customarily performed per the DOT," the VE responded that the individual could work as a receptionist.  *Id*.  On the subject of overhead reaching, the VE in a previous hypothetical commented that the term is not defined in the DOT, but

---

[3] The SVP is "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, App. C, 1991 WL 688702.

7

that in his experience none of Plaintiff's past relevant occupations would "require reaching overhead more than occasionally." AR 95. The VE made no similar comment about bilateral reaching. After the VE finished testifying, the ALJ asked him if his testimony was "consistent with the *Dictionary of Occupational Titles*," to which the VE responded, "[i]t has." AR 101.

### 3. The ALJ's step four findings.

The ALJ ultimately found that Plaintiff could perform her past relevant work as a receptionist without "the performance of work-related activities precluded by the claimant's residual functional capacity." AR. 43. The ALJ went on to list Plaintiff's past relevant work by DOT number, exertion level, and SVP. *Id.* In support of her finding, the ALJ wrote,

> [t]he vocational expert testified during the supplemental hearing that an individual with the above-referenced residual functional capacity would be able to perform the past relevant work as a *Receptionist*. The undersigned agrees with the vocational expert's testimony. After comparing the residual functional capacity with the physical and mental demands of this job, the undersigned finds that the claimant was able to perform it as actually and generally performed through the date last insured (SSR 00-4p). Pursuant to SSR 00-4p, the undersigned determined that the vocational expert's testimony is consistent with the information contained in the DOT.

*Id.* The above represents the whole of the ALJ's step four analysis.

### D. Issues Presented

Plaintiff contends that the ALJ's finding at step four that Plaintiff was capable of performing receptionist work "as generally performed" is not supported by substantial evidence. Specifically, Plaintiff contends the ALJ erred by improperly failing to "inquire as to the existence of" and "note apparent conflicts between" the vocational expert's testimony and the DOT. ECF No 27 at 4. Plaintiff's reasoning is as follows: the fourth hypothetical presented was the only hypothetical that was "substantially identical to the RFC that the ALJ ultimately found."[4] *Id.* The VE testified that this hypothetical individual could perform the occupation of receptionist. *Id.* Therefore, the ALJ's step four finding that Plaintiff could perform her past relevant work as a receptionist was based on the fourth hypothetical. *Id.* Both the hypothetical and the RFC included a limitation to

---

[4] Plaintiff writes that the fourth hypothetical is substantially similar to her RFC, ECF No 27 at 4, but on the following page states, "[a]s such, the ALJ's finding at step four was based on the expert's response to the first hypothetical. *Id.* at 5. As the fourth hypothetical and not the first is identical to Plaintiff's RFC, the Court treats Plaintiff's statement on page 5 of her brief as a typo.

8

"occasionally" reaching overhead and at shoulder height bilaterally.  AR 39, 98.  The tables presented in the Selected Characteristics of Occupations ("SCO"),[5] however, lists the occupation of receptionist as requiring "frequent" reaching.  SCO at 07.04.02.  Plaintiff argues that this is an "apparent" conflict that the ALJ had a duty to reconcile according to the Ninth Circuit as articulated in *Lamear v. Berryhill*, 865 F.3d 1201, 1206 (9th Cir. 2017).  ECF No. 27 at 4.  Plaintiff contends that the ALJ failed to do so, and that her step four finding is not supported by substantial evidence as a result.  *Id.*

> **1. The ALJ did not err in failing to resolve the conflict between the VE testimony and the SCO because the conflict was not "apparent."**

At step four, the claimant has the burden of proving both that she cannot perform her past relevant work as actually performed and that she cannot perform her past relevant work as generally performed in the national economy.  *Stacy v. Colvin*, 825 F.3d 563, 569 (9th Cir. 2016).  The ALJ, however, is still obligated to adequately develop the record at step four.  C.F.R. § 404.1545(a)(3); *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996).  The obligation to develop the record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

Included in the ALJ's duty to develop the record is the obligation to resolve apparent conflicts between VE testimony and the DOT.  SSR 00-4p;[6] *Massachi v. Astrue*, 486 F.3d 1149 (9th Cir. 2007).  This obligation persists at step four despite the fact that VE testimony is not required at this stage.  *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001).  A conflict is a discrepancy between the testimony and DOT that is "obvious or apparent."  *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016).

Plaintiff's argument that "the ALJ failed to inquire as to the existence of conflicts between the vocational testimony and the DOT," ECF No. 27 at 4, is misleading.  At the close of the VE's

---

[5] The SCO is the companion volume to the DOT providing more detailed explanations of the occupations listed in the DOT.  The ALJ's duty to resolve conflicts between VE testimony and the DOT includes considering information presented in the SCO.  SSR 00-4p.

[6] SSR 00-4p reads, "[w]hen there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency."

1  testimony, the ALJ explicitly asked him to confirm that his testimony was consistent with the DOT, and the VE said that it was. AR 101. To the extent that Plaintiff is arguing that the ALJ had a duty to make a more extensive conflicts inquiry, *Lamear v. Berryhill* holds that "the ALJ's obligation to inquire further" is only triggered where a conflict is "obvious or apparent." *Lamear*, 865 F.3d at 1205. This means that "tasks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about." *Gutierrez*, 844 F.3d at 808. Further, "where the job itself is a familiar one … less scrutiny by the ALJ is required." *Id.*

Plaintiff argues that a limitation to occasional overhead and bilateral reaching constitutes an "apparent" conflict with the SCO, which asserts that receptionists engage in reaching "frequently" from 1/3 to 2/3 of the time. SCO at 07.04.02. The SCO does not distinguish between overhead and bilateral reaching, a fact the VE repeatedly noted in his testimony before going on to explain that in his experience, none of Plaintiff's past work required "overhead reaching" more than occasionally. AR 95; *see also* AR 98 ("again, the overhead reaching is based upon experience"). While the ALJ has a duty to "ask follow up questions" in the face of ambiguous evidence, "the obligation doesn't extend to unlikely situations or circumstances" and is "fact dependent." *Gutierrez*, 844 F.3d at 808-09.

While an ALJ is not "free to disregard the *Dictionary's* definitions," neither is she expected to interrogate every minute departure from the DOT or ignore common sense. *Id.* at 808. In *Gutierrez v. Colvin*, for example, the Court declined to find an apparent conflict between a claimant who could never reach overhead with her right arm and VE testimony that claimant could perform the job of cashier, despite the *Dictionary* listing the position as requiring "frequent" reaching. *Id.* at 807. In coming to its conclusion, the Court acknowledged that, "[a]ccording to the *Dictionary*, 'frequent reaching' is required of … cashiers … But anyone who's made a trip to the corner grocery store knows that while a clerk stocking shelves has to reach overhead frequently, the typical cashier never has to." *Id.* The DOT's "general statement" that the job required frequent reaching did not obviously compel the conclusion that a cashier would likely be reaching overhead frequently; rather, this was an "unlikely and unforeseeable" scenario not consistent with its typical understanding of

cashier work. *Id.* Therefore, the conflict was not sufficiently obvious or apparent such that the ALJ was required to probe more deeply into the VE's testimony. *Id.*

Here, at least with respect to overhead reaching, the VE's testimony clarifying that "overhead reaching is not defined" by the *Dictionary*, but that experience suggests the receptionist position only requires occasional reaching overhead was not sufficiently apparent to trigger the ALJ's obligation to "inquire further" into possible conflicts. AR 95; *Lamear*, 865 F.3d at 1205. Just as the Court found no obvious need for a typical cashier to reach overhead frequently in *Gutierrez*, despite the DOT's classification, the Court does not find an apparent or obvious unresolved conflict here. The ALJ was entitled to rely on the VE's professional experience and her own common sense that overhead reaching is not frequently required in receptionist work, which is, after all, a sedentary job according to the DOT.

Whether the same can be said for bilateral reaching is less clear. Plaintiff correctly notes that the VE never specifically mentioned bilateral reaching at shoulder height, and that his reaching testimony was limited to overhead reaching only. ECF No. 27 at 5. Plaintiff argues that, with respect to the job of receptionist, "our common experience does not rule out reaching at shoulder height" frequently. ECF No 29 at 3-4. She writes, "[o]ur common experience tells us that when we are sitting, something right in front of us—such as a computer screen, telephone, switchboard, etc.—is effectively at shoulder height when we reach for it." *Id.* at 3. The Court sees some merit to these arguments, but ultimately does not find a conflict here sufficiently apparent to trigger the ALJ's duty to interrogate the VE beyond what took place.

First, the Court is not persuaded that an individual sitting at a receptionist's desk, for example, would indeed need to raise her arms all the way to shoulder height to reach for a computer screen or phone, especially considering that office chairs can be adjusted by height or moved closer to the objects in question to minimize the need for extensive reaching. While common experience does not absolutely "rule out" the need to reach, common experience also does not obviously lead to the conclusion that a receptionist would need to reach at shoulder height over 1/3 of the time as opposed to "occasionally."

The description of a receptionist's duties in the DOT itself does not immediately suggest a need for receptionists to reach at shoulder height bilaterally at a frequent rate. U.S. Dep't of Labor, *Dictionary of Occupational Titles*, 237.367-038 (4th ed. 1991), 1991 WL 672192. The DOT entry states that a receptionist:

> [r]eceives callers at establishment, determines nature of business, and directs callers to destination: Obtains caller's name and arranges for appointment with person called upon. Directs caller to destination and records name, time of call, nature of business, and person called upon. May operate PBX telephone console to receive incoming messages. May type memos, correspondence, reports, and other documents. May work in office of medical practitioner or in other health care facility and be designated Outpatient Receptionist (medical ser.) or Receptionist, Doctor's Office (medical ser.). May issue visitor's pass when required. May make future appointments and answer inquiries [INFORMATION CLERK (clerical) 237.367-022]. May perform variety of clerical duties [ADMINISTRATIVE CLERK (clerical) 219.362-010] and other duties pertinent to type of establishment. May collect and distribute mail and messages.

*Id.* As Defendant aptly notes, "[n]othing in this description suggests that medical receptionists spend more than one-third of their workday extending their arms between shoulder and head level." ECF No. 28 at 7.

The Court can imagine a workplace set-up demanding receptionists engage in frequent bilateral reaching at shoulder height, but ultimately the difference between the occasional bilateral reaching Plaintiff could perform and the frequent reaching receptionists generally perform according to the SCO is not distinct enough to constitute an "obvious or apparent" conflict. This is especially true given that the SCO only defines reaching generally as "[e]xtending hand(s) and arm(s) in any direction," which presumably is not limited to overhead or shoulder height reaching, but rather could be reasonably interpreted to include reaching at a downward angle below shoulder height level. SCO C-3.

The facts here do not demonstrate the ALJ ignored an apparent conflict between the DOT and VE testimony. The VE testified that an individual with Plaintiff's limitations, who could "occasionally reach overhead and shoulder height bilaterally" could perform "the occupation of receptionist." AR 98. Just as in *Gutierrez*, "[t]he ALJ was entitled to rely on the expert's "experience in job placement" to account for "a particular job's requirements … and correctly did so here." *Gutierrez*, 844 F.3d at 809, *quoting* SSR 00-4P, 2000 WL 1898704, at *2 (2000).

### 2. Regardless of whether Plaintiff could perform her work as generally performed, there was sufficient evidence in the record for the ALJ to conclude that she could perform her job as actually performed.

Because a claimant has the burden of proving the inability to perform past work as generally performed and as actually performed, *Stacy*, 825 F.3d at 569, a claimant who does not establish disability with respect to either work as generally *or* actually performed is not disabled. *Craig v. Berryhill*, Case No. 2:17-cv-02978-GMN-EJY, 2019 WL 4936033, at *16 (D. Nev. Sept. 17, 2019) ("the ALJ must make findings of fact regarding … whether Plaintiff can return to past relevant work either as actually performed or as generally performed in the national economy. … If a claimant can perform his past relevant work either as actually performed or generally performed, he is not disabled."). Defendant argues that, because Plaintiff "offers no specific challenge to the ALJ's finding that she could perform her receptionist job as she actually performed it … th[e] Court should reject Plaintiff's argument and affirm the ALJ's step four finding." ECF No 28 at 6. In response, Plaintiff points out that the ALJ combined the two types of work when questioning the VE; therefore, her non-specific challenge to the ALJ's step four finding that Plaintiff could perform past relevant work is appropriate. ECF No. 29.

A review of the record confirms that the ALJ and VE indeed discussed actual and general performance simultaneously. *See e.g.*, AR 95,[7] AR 98.[8] Insofar as Defendant is arguing that Plaintiff has waived her right to challenge the ALJ's actual performance finding,[9] the Court finds that Plaintiff's general challenge to the ALJ's conclusion that "the claimant was able to perform [past relevant work] as actually and generally performed" is sufficient. AR 43.

This conclusion, however, does not mean that Plaintiff does not have to specifically establish inability to perform past work as actually performed, as is her burden. *Berryhill*, 2019 WL 4936033 at *16; *Stacy*, 825 F.3d at 569. The two sources of information on which an ALJ may base a

---

[7] ALJ: Could an individual with these limitations perform any of the Claimant's past work as it was actually performed or as customarily performed per the DOT?
VE: Yes, Your Honor. She could perform all past work as defined by the DOT and performed.
[8] ALJ: Could an individual with these limitations perform any of the Claimant's past work as it was actually performed or as customarily performed per the DOT?
VE: Yes, Your Honor. The occupation of receptionist would remain, Your Honor.
[9] Defendant does not explicitly raise the issue of waiver, but rather repeatedly mentions that Plaintiff failed to challenge the ALJ's actual performance finding at the hearing, despite being represented by counsel. *See, e.g.*, ECF No. 28 at 6.

determination as to Plaintiff's past work as actually performed are a vocational report and the claimant's own testimony. *Pinto*, 249 F.3d at 845. Defendant argues that Plaintiff's handwritten description of her receptionist job contained in the administrative record does not establish her inability to work as a receptionist as she actually performed the job. ECF No. 28 at 7. Plaintiff describes her receptionist work as requiring her to "[a]nswer multi[ple] phone lines, maintain up keep of front office, customer services, filing, operate front office equipment, charting." AR 334. This, Defendant argues, is not inconsistent with her RFC. ECF No. 28 at 7. With respect to reaching, Defendant argues Plaintiff stated on her Work History Report that she "did not need to walk, stand, climb, crawl, handle, *or reach*." ECF No. 28 at 2 (emphasis added). Plaintiff responds that this is a mischaracterization of her responses. The form in question does not report the amount of reaching Plaintiff states she performed on the job; rather, Plaintiff left the space for reaching blank. ECF No. 29 at 2; AR 334. A blank response, Plaintiff argues, is in contrast to her responses regarding walking, standing, climbing, crawling, and handling all of which have a "0" in the space for reporting number of hours per day. *Id.* In the end, however, what is true is that Plaintiff described the amount of time she spent in various types of activity, while reporting nothing for reaching. AR 34. The Court finds that Plaintiff's failure to describe how many hours she spent reaching daily is not a claim that she was reaching more than 1/3 of the day as precluded by her RFC.

Plaintiff also argues that the description of her receptionist job she provided was "not adequate to support the conclusion that Plaintiff's duties were meaningfully different, in terms of the amount of reaching, than the general description." ECF No. 29 at 2. This argument again misstates Plaintiff's burden, which is not to establish that the ALJ lacked evidence to conclude Plaintiff's actual work deviated from the job as customarily performed, but rather to establish that her limitations as articulated in the RFC prevented her from performing receptionist work as she has actually performed in the past. *Berryhill*, 2019 WL 4936033 at *16; *Stacy*, 825 F.3d at 569. Plaintiff has not met this burden and, indeed, much of the testimony at her hearings affirmatively contradicts the claim that she could not return to her old position due to the limitations described in her RFC.

With respect to the OB/GYN receptionist job, Plaintiff testified that it "wasn't really that bad," that she did not know if returning to the job "would've been a problem so much," but that she

was unsure if she could handle it full time because she did not know if she "would've been able to concentrate full-time, eight hours a day on [the] job and give it 100 percent if [her] mind is going to always focus on what's going on with [her] husband." AR 134-35. And, Plaintiff de-emphasizes the negative effects of her shoulder injury. AR 136. The ALJ in her decision specifically notes that "[t]he record strongly suggests that the claimant did not work during the relevant period primarily due to taking care of her husband. Notably, the claimant acknowledged during the hearing that she was unable to work full-time through the date last insured because she was focused on her husband's fragile health. … This evidence greatly suggests that her physical symptoms were not as limiting as claimed." AR 40. While the validity of Plaintiff's RFC is not at issue, Plaintiff's testimony casts doubt on her claim that she could not perform receptionist work as it was actually performed.

Plaintiff does not offer a meaningful affirmative argument that she was unable to work as a receptionist as actually performed. Her testimony supports the opposite conclusion. Plaintiff confined her appeal to challenging the ALJ's step four determination on the basis that the ALJ's finding was not supported by substantial evidence, a standard the Ninth Circuit describes as "extremely deferential." *Thomas v. CalPortland*, 993 F.3d 1204, 1208 (9th Cir. 2021). Because the ALJ was only required to find substantial evidence that Plaintiff was not disabled with respect to her work as actually performed or as generally performed, and here the Court finds substantial evidence of both, the Commissioner's decision is affirmed.

### IV.   ORDER

IT IS HEREBY ORDERED that Plaintiff's Motion for Reversal and Remand (ECF No. 27) is DENIED.

IT IS FURTHER ORDERED that Defendant's Cross-Motion to Affirm is GRANTED.

DATED this 2nd of November, 2021.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE